IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| MID-AMERICA REAL ESTATE COMPANY d/b/a COLDWELL BANKER MID-AMERICA GROUP, REALTORS, | ) ) ) ) | NO. 4:04-cv-10175-REL-RAW |
|  | ) | REPORT AND RECOMMENDATION |
|  | ) | CONCERNING PLAINTIFF'S |
| Plaintiff, | ) | MOTION TO ENFORCE |
|  | ) | SETTLEMENT AGREEMENT |
| vs. | ) | AND DEFENDANTS' CROSS- |
|  | ) | MOTION FOR EQUITABLE |
| IOWA REALTY COMPANY, INC. | ) | RESCISSION OF THE |
| and FIRST REALTY, LTD., | ) | SETTLEMENT AGREEMENT |
|  | ) |  |
| Defendants. | ) |  |

The above motions [134 & 137] are before the Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) upon reference from Chief Judge Longstaff.  They came on for argument on June 23, 2005 and are fully submitted on the briefs and arguments.[1]

**I**

**FACTUAL BACKGROUND**

Plaintiff (Coldwell Banker) sued defendants (collectively "Iowa Realty") for violation of the federal antitrust laws, breach of contract and breach of an implied covenant of good faith and fair dealing.  The parties are competing real estate companies. The contract and implied covenant claims concerned a sub-license from Iowa Realty to Coldwell Banker which permitted the latter to use a software system providing Coldwell Banker access to some of

---

[1]The underlying facts which pertain to the cross-motions are not disputed.  Neither side requested evidentiary hearing.

Iowa Realty's listings, and the effect on the sub-license contract
of a new, office-exclusive "Passport Plus" marketing program Iowa
Realty was about to launch.   In its Complaint Coldwell Banker
contended the program would result in a breach of the sub-license
contract and the implied covenant of good faith and fair dealing
inhering in the contract.   Chief Judge Longstaff found Coldwell
Banker was likely to succeed on both claims and entered a
preliminary injunction which halted implementation of the Passport
Plus program.   (May 25, 2004 Order at 12, 14, 22).   Chief Judge
Longstaff also found Coldwell Banker was not likely to succeed on
the antitrust claims and declined to enter a preliminary injunction
based on those claims.   (<u>Id</u>. at 14-20).

Iowa Realty appealed and in an opinion filed May 6, 2005,
a panel of the Eighth Circuit held that while Coldwell Banker was
likely to prevail on the merits of the breach of contract claim,
the contract did not obligate Iowa Realty to store its office-
exclusive listing information on the software system and
irreparable harm to justify an injunction based on the alleged
breach had not been shown.   <u>Mid-America Real Estate Co. v. Iowa
Realty Co.</u>, 406 F.3d 969, 973, 977 (2005).   The Court further held
as a matter of law that Coldwell Banker could not succeed on the
merits of its breach of implied covenant of good faith and fair
dealing claim because such a claim could not create new contract-
based substantive obligations as Coldwell Banker sought to do.   <u>Id.</u>

2

at 974-96. Consequently, the Eighth Circuit dissolved the preliminary injunction and remanded the case to this Court for further proceedings. <u>Id</u>. at 977.

The result of the appeal cut the heart out of Coldwell Banker's case. It could not achieve its primary goal of stopping Passport Plus through its contract-based claims and the antitrust claims were doubtful. Publicly though, Coldwell Banker was unfazed. In a May 10, 2005 <u>Des Moines Register</u> newspaper article Teresa Wahlert, the president of Coldwell Banker's parent company, was reported as saying the decision was not a setback for Coldwell Banker and, referring to the likelihood of prevailing on the contract claim, would give Coldwell Banker "more ammunition" for the pending antitrust claims. (Def. Resistance Ex. A at 1). The next day, however, Coldwell Banker's counsel approached Iowa Realty's counsel about a potential settlement. Iowa Realty was receptive. On May 13 Coldwell Banker's counsel forwarded a draft proposed settlement agreement which, among other things, included a confidentiality provision which limited what the parties could say about the settlement to: "Coldwell Banker and Iowa Realty decided to amicably resolve their disputes and are continuing to compete against each other in the market place." (Def. Resistance Ex. B at 2). The proposed confidentiality provision was not acceptable to Iowa Realty. In a conference between counsel on the afternoon of May 13 Iowa Realty's counsel explained that in view of

Ms. Wahlert's May 10 comments, to which his client took strong exception, Iowa Realty was concerned a confidentiality provision would lead to the erroneous impression that Iowa Realty had paid money.

On May 16, 2005 Coldwell Banker's counsel forwarded a second proposed settlement agreement which omitted any confidentiality provision leaving the parties free to publicly comment as they wish. (Def. Resistance Ex. C at 2-3). Late in the afternoon of May 18 Iowa Realty rejected the second proposal and made alternative counterproposals. (Def. Resistance Ex. D at 1-2). Under the first, in return for foregoing its wrongful injunction damages claim (which Iowa Realty pegged at $1 million), Coldwell Banker would agree that the only public statement it would make would be in the form of a press release announcing it was dismissing all of its claims, noting the Eighth Circuit had found the injunction stopping the Passport Plus program was wrongfully entered, and conceding that after evaluating its claims in light of the Eighth Circuit decision Coldwell Banker believed "the case lacks merit, and decided to dismiss it."  (Id. at 2). Alternatively, Coldwell Banker could say what it wanted about the settlement if it agreed to pay $100,000 for Iowa Realty's damages.

Coldwell Banker was not interested in the second alternative, but at about 6:00 p.m. on May 19, 2005 proposed a revised "public statement" provision which would restrict Coldwell

4

Banker to a press release announcing the dismissal, noting the dissolution of the injunction, and containing a face-saving reference to the Eighth Circuit having "affirmed the trial court's finding on breach of contract." (Def. Resistance Ex. E at 1, 8). The proposal also eliminated the concession that "the case lacks merit."

The next morning, May 20, 2005, Iowa Realty rejected Coldwell Banker's proposed press release language and informed Coldwell Banker's counsel that it needed to know by noon that day whether Coldwell Banker would accept the version of the press release Iowa Realty had proposed on May 18. (Hrg. Tr. at 19-21). Coldwell Banker would not agree to the "case lacks merit" clause. The logjam was broken when Iowa Realty agreed to omit that language. Counsel then agreed in principle to a settlement under which Coldwell Banker would agree the only public statement it would make would be a press release as follows:

> Coldwell Banker Mid-America Group announced today that it was dismissing with prejudice all claims it had made against Iowa Realty Company and First Realty, Ltd. in a lawsuit begun last year in federal district court in Des Moines. The United States Court of Appeals for the Eighth Circuit recently dissolved the injunction preventing Iowa Realty Group from implementing its Passport Plus office exclusive home listing program, finding that the injunction had been wrongfully entered. Following that decision, and an evaluation of its claims, Coldwell decided to dismiss this litigation.

(Pl. Motion Ex. A at 5).

On May 23, 2005 a written settlement agreement was finalized and signed in counterparts by the parties. By its terms the agreement then became effective. (Pl. Motion Ex. at 1). The agreement included a stipulation of dismissal with prejudice of all the remaining counts in the First Amended Complaint, a mutual release, and the return of discovery documents. (Id. at 1-5). Concerning the public statement restriction the agreement provided: "Coldwell Banker agrees that the only public statement it will make with regard to the dismissal will be the one . . ." quoted above. (Id. at 1). The agreement did not restrict public statements by Iowa Realty.

On May 19, 2005, unknown to Coldwell Banker's counsel, Coldwell Banker's president, Carolyn Helmlinger, was interviewed by a reporter from the Inman News about the Eighth Circuit's decision.[2] When asked to comment on the result of the appeal, Helmlinger said:

> . . . We think it's a great victory because it has been actually confirmed that the contract was broken that we had with them . . . . We stopped them for 14 months, which we felt was good . . . .

(Def. Resistance Ex. H at 2). Coldwell Banker had not given any assurance it would refrain from public statements about the

---

[2]In its motion Coldwell Banker states Helmlinger's recollection is that the interview was on May 16 or 17. However, in the absence of an affidavit to that effect from Ms. Helmlinger the Court will assume that she was interviewed on Thursday, May 19, as stated in the article. (Def. Resistance Ex. H at 2).

litigation during the negotiations, nor did Iowa Realty seek such an assurance.

The <u>Inman News</u> is an internet news service.  The parties appear to agree with its Web site assertion that it is "the nation's leading real estate news service" providing real estate news to more than 50,000 Web sites, and 250 newspapers which reach "millions of consumers and real estate professionals every day." (Def. Resistance at 8 n.1).

The parties had agreed that upon receipt of Iowa Realty's executed counterpart signature page Coldwell Banker's counsel would sign for Iowa Realty and file the dismissal.  Coldwell Banker's counsel received the signature page late on the morning of Monday, May 23, 2005.  After he had signed the settlement agreement that morning, but before the dismissal was filed, the <u>Inman News</u> article came to the attention of Iowa Realty's president, Mr. R. Michael Knapp.  Mr. Knapp considered the quotations attributed to Helmlinger to be contrary to the public statement restriction in the settlement agreement and to have impaired the value of the restriction to Iowa Realty.  (Def. Resistance Knapp Aff. at 3-4). He instructed Iowa Realty's counsel to take action to nullify the agreement.  Iowa Realty's counsel promptly rescinded the authorization previously extended to Coldwell Banker's counsel to file the stipulated dismissal.

Coldwell Banker filed its motion to enforce the settlement agreement the next day, May 24, 2005. Iowa Realty resists enforcement of the settlement agreement on the basis of inequitable conduct in Coldwell Banker's failure to disclose Ms. Helmlinger's interview statements prior to execution of the settlement agreement. In addition, by cross-motion Iowa Realty seeks rescission of the settlement agreement on the basis that the nondisclosure amounted to fraudulent inducement and/or resulted in a unilateral mistake on its part concerning the absence of public statements like Helmlinger's.

## II

## DISCUSSION

Iowa law controls the enforcement or rescission of the settlement agreement. See Amana Refrigeration, Inc. v. Pidgeon's Furniture & Appliance Stores, Inc., 883 F.2d 657, 658 (8th Cir. 1989). It is well established in Iowa case law that settlement agreements are essentially contracts and therefore principles of contract law govern the creation, interpretation and enforceability of such agreements. Sierra Club v. Wayne Weber LLC, 689 N.W.2d 696, 702 (Iowa 2004); Phipps v. Winneshiek County, 593 N.W.2d 143, 146 (Iowa 1999); Waechter v. Aluminum Co. of America, 454 N.W.2d 565, 568 (Iowa 1990). Iowa law favors the voluntary settlement of legal disputes. Wright v. Scott, 410 N.W.2d 247, 249 (Iowa 1987). Accordingly, Iowa courts "enforce a settlement agreement absent

fraud, misrepresentation or concealment." <u>Phipps</u>, 593 N.W.2d at 146 (citing <u>Bergman v. Bergman</u>, 247 Iowa 98, 103, 73 N.W.2d 92, 96 (1955)). "Where a compromise and settlement is shown it is presumed to be fair, valid, and correct and the burden of proving mistake, fraud or other facts relied on to avoid it is on the person who seeks to do so." <u>Bergman</u>, 247 Iowa at 103, 73 N.W.2d at 96.

It is appropriate to start with Iowa Realty's cross-motion arguments for rescission based on fraud in the inducement and unilateral mistake. Rescission is a form of equitable relief. If Iowa Realty is entitled to rescind the settlement agreement there is nothing for the Court to enforce. On the other hand, if Iowa Realty has not shown any basis in equity to rescind the agreement enforcement should normally follow.[3]

---

[3]The underlying premise for Iowa Realty's resistance to enforcement of the settlement agreement is that Ms. Helmlinger's statements to <u>Inman News</u> would have violated the public statement restriction the parties were at the time negotiating. By its terms, the public statement provision in the settlement agreement prevented Coldwell Banker from saying anything publicly "<u>with regard to the dismissal</u>" beyond the press release. At hearing Coldwell Banker suggested this language does not prohibit it from making historical statements about the Eighth Circuit decision or commenting on the litigation other than with respect to the dismissal. (Hrg. Tr. at 28). It points out the settlement agreement language in question originated with Iowa Realty's May 18, 2005 counterproposal. (<u>See</u> Def. Resistance Ex. D at 2).

To Iowa Realty Ms. Helmlinger's statements were precisely the kind of comment the public statement provision was intended to stop. For the purposes of this ruling, the Court has assumed Iowa Realty has the better part of this argument and that the provision
(continued...)

**Fraud in the Inducement**

The alleged fraud is Coldwell Banker's nondisclosure of the pre-agreement statements by Ms. Helmlinger to Inman News. Iowa Realty argues that in the circumstances the nondisclosure amounted to a misrepresentation that no such statements had been made. The elements of equitable rescission based on misrepresentation are:

> (1) A representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance.

City of Ottumwa v. Poole, 687 N.W.2d 266, 269 (Iowa 2004); see Rubes v. Megna Life & Health Ins. Co., Inc., 642 N.W.2d 263, 269 (Iowa 2002); Hyler v. Garner, 548 N.W.2d 864, 872 (Iowa 1996). In the Court's judgment the record does not support a finding in Iowa Realty's favor on the first, fourth and fifth elements.[4]

---

[3](...continued)
was intended to limit Coldwell Banker's public statements about the litigation. Though it is not necessary to interpret the provision in deciding the present motions, it is appropriate to note the contract issues implicated. Coldwell Banker's narrow, literal interpretation is textually supported, but invites a response that such an interpretation would rob the public statement provision of any real significance and be inconsistent with the evident purpose of the provision as shown by the negotiations which led up to its adoption. As the Eighth Circuit observed in this case, the implied covenant of good faith and fair dealing "prevents one party from using technical compliance with a contract as a shield from liability when that party is acting for a purpose contrary to that for which the contract was made." Mid-America Real Estate, 406 F.3d at 974; see Kooyman v. Farm Bureau Mut. Ins. Co., 315 N.W.2d 30, 34 (Iowa 1982) (quoting Restatement (Second) of Contracts § 205 cmt a (1981)) (also cited in Mid-America Real Estate, 406 F.3d at 974).

[4]If Coldwell Banker's nondisclosure was the equivalent of a
(continued...)

1.    Representation

Under Iowa law "in some circumstances a failure to disclose material facts may be the equivalent of a false assertion." Poole, 687 N.W.2d at 269 (citing First Nat'l Bank in Lenox v. Brown, 181 N.W.2d 178, 182 (Iowa 1970)).  In this regard the Iowa Supreme Court has applied Restatement (Second) of Contracts § 161 (1981) [hereinafter "Restatement § 161"].  Id. Iowa Realty relies on subsection (b) of § 161 to establish a representation by nondisclosure:

> A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist . . . .
>
>        . . . .
>
>    (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

Restatement § 161(b).

Coldwell Banker's nondisclosure of Ms. Helmlinger's statements to Inman News was not made with knowledge that disclosure of the statements would correct a mistaken assumption on Iowa Realty's part that Coldwell Banker had made no further public

---

[4](...continued)
misrepresentation that Coldwell Banker had not made the statements attributed to Ms. Helmlinger, such a representation would be false. The Court has accepted the affidavit of Mr. Knapp concerning the materiality of the statements.  (Def. Resistance Knapp Aff. at 4).

statement similar to Ms. Wahlert's of May 10.  Coldwell Banker had
no reason to know Iowa Realty assumed the nonexistence of
additional public comments similar in vein to Wahlert's, or that
such an assumption was basic to Iowa Realty's making of the
contract, if indeed it was.  On May 19 when Ms. Helmlinger made her
comments, the Eighth Circuit's decision and its aftermath remained
a subject of local public and therefore, media interest.  Both
sides anticipated there would be invitations for them to comment
about the Eighth Circuit's decision and the future of the case.  In
fact, Iowa Realty's expectation of "inevitable media coverage"
about any settlement was why it would not agree to a mutual
confidentiality clause.  (Def. Resistance at 5).  At the same time,
though the negotiations had picked up momentum, whether the parties
would conclude a settlement and the content of a restriction on
what Coldwell Banker could say about it were very much up in the
air.  There is no evidence Iowa Realty's representatives said or
did anything which should have alerted Coldwell Banker that Iowa
Realty assumed it had stopped talking about the case, or
conversely, that Coldwell Banker said or did anything which would
give rise to such an assumption.  Thus, on May 19 neither side
could reasonably assume the other had said, or would say, nothing
further publicly about the case.

        Lastly on this subject, it is conceptually difficult to
find a nondisclosure amounting to a representation where the

alleged nondisclosure is of a statement made to the representative of a major media organization presumably with the expectation it would be widely reported and become known to Iowa Realty.

Absent knowledge that disclosure would correct Iowa Realty's mistaken assumption, Coldwell Banker cannot be found to have failed to act in good faith by the nondisclosure.

2.   Intent

Equity permits rescission of a contract based on misrepresentations without proof of knowledge of falsity or intent to deceive on the part of the party making the representations. Even innocent misrepresentations may support rescission of a contract.  Hyler, 548 N.W.2d at 872.  However, misrepresentations must be made with the intent to cause the other to act or refrain from acting.  Id. at 872.  The intent element "goes to the purpose for which the representations are made." Rubes, 642 N.W.2d at 270; see Poole, 687 N.W.2d at 269.

Clearly, the nondisclosure of Ms. Helmlinger's statements to Inman News was not motivated by an intent to induce Iowa Realty to enter into the settlement agreement.  As noted, Ms. Helmlinger must have made her statements with knowledge of a likelihood they would be published and become known to Iowa Realty.  She would not have known on May 19 when or if any settlement would come together. Where a party has reason to believe the other party has or soon will obtain knowledge of the nondisclosed fact, the nondisclosure

13

cannot have been made with intent to cause the other to act or refrain from acting.

       3.   Reliance

      Finally, evidence of justifiable reliance is lacking. At the time the parties were exchanging settlement proposals Iowa Realty's relationship with Coldwell Banker was not one conducive to reliance. In his affidavit Mr. Knapp states Iowa Realty viewed Wahlert's May 10 newspaper comments as "spinning" of the Eighth Circuit decision in a way which mischaracterized the decision. (Def. Resistance Knapp Aff. at 2). As a result, Iowa Realty did not trust Coldwell Banker, which is why Iowa Realty rejected Coldwell Banker's initial mutual confidentiality proposal. (<u>Id</u>.) Iowa Realty had no confidence that Coldwell Banker would honor a requirement to keep the settlement confidential. Against this backdrop of mistrust and upset over Coldwell Banker's public response to the Eighth Circuit ruling it is doubtful Iowa Realty in fact relied on the absence of additional public statements similar to Wahlert's at the time it agreed to terms, and given the interest in the case which foreseeably presented opportunities for public comment, any such reliance was not justifiable.

      Iowa Realty has not established a basis to rescind the settlement agreement for fraudulent inducement.

**Unilateral Mistake**

"[A] unilateral mistake by one party will not release that party from its obligation under [a] contract absent fraud, misrepresentation, or other misconduct." State ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 150 (Iowa 2001) (citing Bachman v. Easy Parking of Am., Inc., 252 Neb. 325, 330, 562 N.W.2d 369, 373 (1997)).  Typically the other party must have reason to know of the mistake, have caused it, or the effect of the mistake makes enforcement of the contract unconscionable. See United Suppliers, Inc. v. Schroeder, 683 N.W.2d 126, 2004 WL 894004 *2 (Iowa App. 2004) (citing Restatement (Second) of Contracts § 153 (1981)) ("Restatement § 153").  Courts are usually reluctant to void contracts on the basis of unilateral mistake and the evidence offered to support such a claim should be viewed with particular care.  Restatement § 153 cmt a.  As described in the Restatement, the elements of the doctrine of unilateral mistake, as they might apply here, are (1) a mistake by one party at the time the contract was made; (2) concerning a "basic assumption" on which the party made the contract; (3) which "has a material effect on the agreed exchange of performances that is adverse to" the mistaken party; (4) if the mistaken party "does not bear the risk of mistake"; and (5) the other party "had reason to know of the mistake or his fault caused the mistake." Restatement § 153.  The Court will assume the first and third elements are satisfied, though the latter merits

brief discussion.  The record does not establish the second, fourth and fifth elements.

In rejecting the fraudulent inducement claim the Court has already found the record does not establish fraud or misrepresentation on the part of Coldwell Banker.  <u>Unisys</u>, 637 N.W.2d at 150.  Consequently, much of the discussion above concerning fraudulent inducement also applies to the unilateral mistake analysis.

The alleged mistake was an erroneous assumption by Iowa Realty that Coldwell Banker had made no further public statements during the settlement negotiations similar to Ms. Wahlert's of May 10.  For the same reasons the nondisclosure of the Helmlinger interview was not a representation, <u>see</u> <u>supra</u>, at 11-12, the Court is not convinced the absence of other similar public statements was a basic assumption on which Iowa Realty made the settlement agreement.

Iowa Realty says the <u>Inman News</u> account of Ms. Helmlinger's comments concerning the Eighth Circuit decision materially and adversely affected the value to Iowa Realty of the settlement agreement restrictions on Coldwell Banker's public statements.  (Def. Resistance Ex. I, Knapp Aff. at 4).  The Court will defer to Iowa Realty's assessment in this regard, though viewed objectively it is difficult to credit.  What Ms. Helmlinger said on May 19 was essentially an iteration of what Ms. Wahlert

16

said on May 10--a positive spin on the Eighth Circuit decision
because the court found a probable breach of contract.  It was
nothing new.  The relevant performance by Coldwell Banker was its
promise to say no more beyond the press release acknowledging the
wrongful injunction, that Iowa Realty could implement the Passport
Plus program, and after the Eighth Circuit decision Coldwell Banker
had decided to fold its cards.  Iowa Realty was free to publicly
characterize the settlement, if it cared to, as a capitulation
following a distinctly unfavorable appellate ruling for Coldwell
Banker.  With or without Ms. Helmlinger's May 19 statements to
Inman News, the press release severely undercut the credibility of
Coldwell Banker's earlier characterizations of the Eighth Circuit
decision which is what the public statement provision of the
settlement agreement was designed to do.

        Among the circumstances under which a party bears the
risk of mistake is one in which the party "is aware, at the time
the contract was made, that he has only limited knowledge with
respect to the facts to which the mistake relates but treats his
limited knowledge as sufficient . . . ."  Restatement (Second) of
Contracts § 154(b) (1981).  Iowa Realty only knew what it had read
about Coldwell Banker's comments.  It was aware it lacked knowledge
about whether Coldwell Banker had made additional objectionable
public statements which had not yet come to its attention and knew
of the media interest which might prompt such statements.  It

proceeded to enter into the settlement agreement with the limited knowledge it had in hand.

Finally, here again, there is no basis to conclude Coldwell Banker was aware Iowa Realty assumed it had made no other public statements like Ms. Wahlert's and Iowa Realty's mistake in this regard was not caused by Coldwell Banker.  See supra, at 11-12.

The settlement agreement is not voidable on the ground of unilateral mistake.

**Enforcement of the Settlement Agreement**

Having found Coldwell Banker's failure to disclose Ms. Helmlinger's interview with Inman News does not present an equitable basis upon which to rescind the settlement agreement, it would be inconsistent for the Court to, as Iowa Realty urges, nonetheless refuse to enforce the settlement agreement because the failure to disclose the interview was inequitable conduct.  The Court can appreciate that learning of the Helmlinger interview after just putting pen to the settlement agreement was irritating to Iowa Realty, but viewed in the overall context of the course of settlement negotiations the fact Coldwell Banker did not tell Iowa Realty about the interview was not "inequitable, unfair, dishonest, fraudulent or deceitful conduct" which would bar enforcement of the settlement agreement.  Ellwood v. Mid States Commodities, Inc., 404 N.W.2d 174, 184 (Iowa 1987).

18

Iowa Realty refers to Iowa case law on the subject of specific performance generally, and in other factual situations, which describes specific performance as an equitable, discretionary form of relief to be granted "only in extraordinary cases, in which irreparable harm will result." Dergo v. Kollias, 567 N.W.2d 443, 445 (Iowa App. 1997) (citing Breitbach v. Christenson, 541 N.W.2d 840, 843 (Iowa 1995)).  While Coldwell Banker's effort to enforce the settlement agreement is a species of specific performance, broad principles concerning specific performance have little to do with the enforcement of a settlement agreement.  Iowa law instructs valid settlement agreements should be enforced.  See supra, at 8-9. To regard the enforcement of a settlement agreement as something extraordinary, only appropriate on a showing of irreparable harm would be counterproductive to the strong Iowa public policy in favor of the settlement of controversies.

## III

### RECOMMENDATION AND ORDER

In view of the foregoing it is **RECOMMENDED** that Coldwell Banker's motion to enforce settlement agreement be granted and Iowa Realty's cross-motion for rescission be denied.  The parties should be ordered to file the Joint Stipulation of Dismissal attached to

the settlement agreement within three (3) business days[5] of any order adopting this Report and Recommendation.

IT IS ORDERED that the parties have until **August 15, 2005,** to file written objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1).  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997).  Any objections filed must identify the specific portions of the Report and Recommendation and set forth the basis for such objections.  See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357.  Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact.  Thomas v. Arn, 474 U.S. 140, 155 (1985); Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994); Halpin v. Shalala, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); Thompson, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 1st day of August, 2005.


ROSS A. WALTERS
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[5]Three days is the time period provided in the settlement agreement for filing the Joint Stipulation of Dismissal.  (Pl. Motion Ex. A).

20